## PADGETT v. TRENT et al.

No. 4175—Opinion Filed Sept. 12, 1916.

Rehearing Denied Sept. 12, 1916.

(160 Pac. 38.)

**Public Lands—Town-Site Commission—Patents.**

A patent issued through the Town-Site Commission of the Creek Nation is impervious to attack in a court of equity, unless the Commission was induced to issue it to the wrong party by an erroneous view of the law or by a gross or fraudulent mistake of facts.

A. The petition examined, and held to state facts sufficient to constitute a cause of action.

(Syllabus by Rittenhouse, C.)

Error from District Court, Muskogee County; R. C. Allen, Judge.

Action by J. E. Padgett against W. C. Trent and others, Trustees of the School District of the City of Muskogee, Okla., and the Board of Education of the City of Muskogee, Okla. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

A. A. Richards and B. B. Wheeler, for plaintiff in error.

Irwin Donovan, for defendants in error.

Opinion by RITTENHOUSE, C. This action involves the title to block 209 in the city of Muskogee, Okla., alleged to be of the value of $35,000. The tribal deed or patent for this block was issued to the trustees of the school district of Muskogee, Ind. T. The petition, to which a demurrer was sustained, contains 98 closely typewritten pages, setting out the facts, the text of the various laws of congress and Arkansas affecting the title to the block in controversy, the correspondence between the government officials, and all the pleadings and evidence before the Creek Town-Site Commission and the Secretary of the Interior, and their decisions thereon relative to the application of plaintiff to have the block in controversy scheduled to him.

The essential facts as alleged are:

That Jane Dolman, a Creek Indian by blood, was enrolled under the name of Elizabeth Jane Dolman, opposite No. 2932, as 51 years of age in 1898. That about the year 1882, in accordance with the tribal laws and customs, she took possession of a tract of land, consisting of about 60 acres, then being an unoccupied portion of the Creek domain, inclosing the same with a wire fence and erecting a residence thereon, and from that time until the sale thereof continued to use, occupy, till, cultivate, and raise crops thereon. That all of said land was within the limits of the town site of Muskogee, as surveyed and platted by the first Muskogee Town-Site Commission. That block 209 constituted a portion of the tract of land so enclosed. That the Missouri, Kansas and Texas Railroad was constructed through what is now the city of Muskogee in 1872, and the tract of land so taken in possession by Jane Dolman was within three miles of said line of railroad. That the National Council of the Creek Nation enacted a tribal law (Perryman's Constitution and Laws of the Creek Nation 1890, sec. 1, art. 4, c. XII), which was as follows:

"All citizens of this nation having improvements or residences on the line of any railroad, within three miles distance of the same, on either side, and all citizens who may hereafter make improvements or build residences on the same shall have the exclusive right to a claim of one square mile of land to each and every family."

That Jane Dolman was in the exclusive possession of said tract of land, and the owner and holder of the improvements thereon on March 18, 1898, when the town of Muskogee was incorporated and said tract of land inclosed within its corporate limits. That on June 28, 1898 (chapter 517, 30 Stat. 495), when the Curtis Act became a law, she was in the exclusive possession and owner and holder of the improvements on said land. That section 14 of said act provided:

"That owners and holders of leases or improvements in any city or town shall be privileged to transfer the same."

That on November 10, 1898, Jane Dolman. for a valuable consideration, sold the occupancy and right of possession to and improvements upon the land, now designated as block 209, to A. H. Sharum. which was evidenced by a written bill of sale, and Sharum went into possession thereof, remaining in possession until March 31, 1899, when he sold and delivered to J. E. Padgett, plaintiff herein, his occupancy and right of possession to and improvements upon said land, and that the said Padgett immediately entered upon and took possession of said land.

The plaintiff bases his claim of title upon that part of section 13 of the Original Allotment Agreement (chapter 676, 31 Stat. 861), which reads as follows.

"Also any person who had at the time of signing this agreement purchased any lot,

tract, or parcel of land from any person in legal possession at the time, shall have the right to purchase the lot embraced in same by paying one-half of the appraised value thereof, not, however, exceeding four acres."

There were five different schedules made of the lot in controversy by the three successive town-site commissions, as follows:

FIRST.

Improvements on Lots.
March 24, 1900.

| Lot No. | Block No. | Front. | Depth. | Owner. | Appraised Value. | Business or Residence. |
|---|---|---|---|---|---|---|
| 1 | 209 | | | | | Public. |

SECOND.

Schedule of Appraisement of Lots Exclusive of Improvements.
May, 1900.

| Lot No. | Block No. | Front. | Depth. | Owner. | Appraised Value. |
|---|---|---|---|---|---|
| 1 | 209 | | | School | Public use. |

THIRD.

Schedule of Appraisement of Lots in Muskogee, Indian Territory.

| Lot. | Block. | Owner. | Appraised Value. | Sec |
|---|---|---|---|---|
| 1 | 209 | | School Public use. | |

FOURTH.

Department of the Interior, Town-Site Commission's Schedule of Appraisement.
Town of Muskogee, in Creek Nation, Indian Territory.

| Lot No. | Block No. | Improvements. | | Appraised Value of Improvements. | Appraised Value of Lots. | Rate % or Sec. |
|---|---|---|---|---|---|---|
| | | Owner. | Character and Remarks | | | |
| | 209 | | Incorporated city of Muskogee for school purposes. | | 49.20 | 20 |

FIFTH

Department of the Interior, Town-Site Commission's Schedule of Appraisements.
Town of Muskogee, in Creek Nation, Indian Territory.

| Lot No. | Block No. | Improvements. | | Appraised Value of Improvements. | Appraised Value of Lots. | Rate % or Sec. |
|---|---|---|---|---|---|---|
| | | Owner. | Character and Remarks. | | | |
| | 209 ½ | School District of Muskogee. | | | 49.20 | 20 |

It is further alleged:

That the first Muskogee Town-Site Commission was appointed in April, 1899, and that the incorporated town of Muskogee had no authority to receive or hold the title to real estate for school purposes, as the school district of Muskogee had been organized and established in 1898, and as the corporate limits of Muskogee had been extended, after which time the town of Muskogee and the school district of Muskogee constituted and represented different areas and population. That there was no provision of law, either in the Curtis Act or in any other law, authorizing or empowering said commission to reserve or schedule either to the town of Muskogee or the school district any portion of said town site for school purposes. That the Secretary of the Interior, on April 21, 1899, instructed the commission that:

"You will set apart for the use of all schools, churches, parsonages, charitable institutions, and other public buildings the lots or blocks within the town of Muskogee that may be now actually occupied and used by such institutions, and you need not appraise either the lands thus reserved for this purpose, nor the improvements thereon."

That block 209 was not actually occupied or used for school purposes, and had never been so used, but was then in the undisputed possession of plaintiff; that in July, 1899, one or more of the commissioners, together with certain members of the school board, selected block 209 for school purposes, which was not then being occupied or used for school purposes. That the first schedule was made showing block 209 not appraised, but bearing the inscription "Public." That in May, 1900, the same commission made a supplemental schedule of appraisement reciting the words "School Public use." That on June 28, 1901, the second Muskogee Town-Site Commission was appointed, but no rules and regulations were ever made, issued, or promulgated relative to the surveying, platting, and disposal of town lots, nor relating to contests therefor, as provided by the terms of the act of May 31, 1900, and the Creek Allotment Agreement, until August 20, 1904. That block 209 contained less than four acres, That in July, 1901, plaintiff was more than 21 years of age and a resident of Muskogee. That on said date plaintiff did not own and never had owned or claimed any other land or lots within said town site. That in July, 1901, plaintiff, appeared before the second Muskogee Town-Site Commission, presented the conveyances from Jane Dolman to A. H Sharum and from Sharum to plaintiff, and claimed the right to have said block awarded and scheduled to him under the terms of the Creek Allotment Agreement, requesting the commission to investigate his rights to said block and to award and schedule the same to him. That thereupon the commission re-

turned said deeds to plaintiff, and informed him that said block had not been appraised; but had been reserved for public purposes. That the same was not awarded or scheduled by said commission to any person corporation, or body corporate, and consequently plaintiff could not institute any contest to determine or establish his rights in and to said block. That the third schedule of appraisement was made by the commission and approved by the Secretary of the Interior on August 10, 1901, bearing the words, "School-Public use." That section 20 of the Creek Allotment Agreement, under which the third schedule and approval was made, reads as follows:

"20. Henry Kendall College, Nazareth Institute, and Spaulding Institute, in Muskogee, may purchase the parcels of land occupied by them, or which may have been laid out for their use and so designated upon the plat of said town, at one half- of their appraised value, upon conditions herein provided; and all other schools and institutions of learning located in incorporated towns in the Creek Nation may, in like manner, purchase the lots or parcels of land occupied by them."

That said block was occupied by no school or institution of learning, either on March 8, 1900, when said Creek Allotment Agreement was signed, or on March 1, 1901, when said agreement was ratified by Congress, or on May 25, 1901, when said agreement was ratified by the Creek Nation, or at any time said award and schedule was made by said commission or approved by the Secretary of the Interior, and had never been, at any such times or prior thereto, occupied by any school or institution of learning, by the city of Muskogee, or by the school district of Muskogee; all of which facts, both as to the law and the occupancy of said block, were not only well known to said Muskogee Town-Site Commission at the times said award and schedule were made, but also to the Secretary of the Interior at the time he approved the same. That said block 209 was so·awarded and scheduled by said commission with the full knowledge that its action in so doing was in violation and contravention of law, and with the express purpose and fraudulent intent on its part, and the members thereof, of securing the reservation of said block for school purposes, for much less· than its fair appraisable value. That said block was not separately appraised by the second Muskogee Town-Site Commission. At the end of said schedule there appeared:

Area in acres, parks, etc., 56 acres at $20.00 _____$1,120.00
Area in acres, cemeteries, 81 acres at $20.00 _____ 1,620.00

That there was nothing in said schedule disclosing the fact that said block 209 was included in the 56 acres designated as "parks, etc." That before the plaintiff had learned that said block was included therein the second Muskogee Town-Site Commission· had been abolished, and the Creek Town-Site Commission had been appointed and authorized to do and perform all acts necessary and proper under the law relative to the town site of Muskogee. That after the appointement of the Creek Town-Site· Commission plaintiff filed a written application to have said block awarded and scheduled to him, setting out in full the basis of his claim, and asking that he be permitted to institute a contest before said commission to establish his rights in and to said block. That after a hearing the commission refused to entertain jurisdiction, holding that they had no jurisdiction or power to revise or change in any manner the schedules prepared by the former commissions or to schedule and award the block to plaintiff, no matter what his rights were, and that, if plaintiff had any rights to said block he must present his claims to the second Muskogee Town-Site Commission for adjudication, and that said Creek Town-Site Commission refused to inquire into the merits thereof or to permit plaintiff to institute a contest. That the Creek Town-Site Commission kept no minute book or record of their proceedings, and its files and papers have been lost or destroyed and cannot be found. That in May, 1902, plaintiff went before the Indian agent at the Union Agency at Muskogee, the officer designated to receive payment on lots in Muskogee, and informed him that said plaintiff desired· to pay for said block 209, but was informed that the same had not been appraised, and that thereupon plaintiff tendered $140 in gold coin as the fair appraisment and value of said block at the time the townsite of Muskogee was appraised, which tender was refused. That thereafter, but prior to October 18, 1902, the Creek Town-Site Commission prepared and certified to what they termed a schedule of cer· tain blocks in the town-site of Muskogee, which were designated on the schedule of the second Muskogee Town-Site Commission as school property, which schedule and the certificate thereto are as follows:

Department of the Interior, Town-Site Commission's Schedule of Appraisement.
Town of Muskogee, in Creek Nation, Indian Territory.

| Lot No | Block No. | Improvements | | Appraised Value of Improvements. | Appraised Value of Lots. | Rate per ct. or Sec. |
|---|---|---|---|---|---|---|
| | | Owner | Character and Remarks | | | |
| | 209 | | Incorporated city of Muskogee for school purposes | | 49.20 | 20 |

We hereby certify that the above and foregoing schedule is true and correct, and that the incorporated city of Muskogee is entitled to purchase, under the provisions of section 20 of the agreement with the Creek Nation, the property described, at 50 per cent. of its appraised value, which 50 per cent. will equal $20 per acre.

Upon the original schedule of the appraisement of the town site of Muskogee the above property was simply set aside for school purposes and appraised jointly with the parks at $20 per acre. There not being any provision in the Original Agreement for the payment of parks, it was expected when the original schedule was prepared that the town would also be allowed to purchase the parks and also pay $20 per acre for the land set aside for the school purposes. The Supplemental Agreement with the Creek Nation, ratified by the act of Congress approved June 30, 1902, provides for the payment for parks at $20 per acre, but leaving the disposition of school property the same as previously provided by the original agreement; therefore, in order to finally dispose of the town-site matters at this place, this supplemental schedule is prepared in order to properly show these lots to the city of Muskogee. No payments have ever been made by the city of Muskogee covering this property, as this commission has not notified them that they would be permitted to pay. Therefore, in view of the fact that it was originally contemplated that the town should pay $20 per acre, the appraisement of each tract has been increased so that, when 50 per cent. is paid under the provisions of section 20, the Creek Nation will realize an amount for each tract equal to $20 per acre.

We therefore respectfully recommend the approval of this schedule.

The Indian inspector forwarded to the Secretary of the Interior this schedule, which was approved November 1, 1902. Plaintiff then alleges:

That, when the schedule was made by the Creek Town-Site Commission and approved by the Secretary of the Interior, the city of Muskogee had no right, power, or authority under the law to buy, own, hold, or possess real estate for school purposes, and neither the Creek Town-Site Commission nor the Secretary of the Interior had any authority under section 20 of the Creek Allotment Agreement to award or schedule said block for school purposes to the incorporated city of Muskogee, and that their actions in so doing were null and void. That on November 15, 1902, the plaintiff, who was then in total ignorance of the schedule approved by the Secretary on November 1, 1902, forwarded a verified application to the Secretary of the Interior asking for a rehearing, which petition was referred to the Indian inspector for the Indian Territory for investigation and report. The same was thereupon referred to

the Creek Town-Site Commission by the inspector, and the commission held a hearing commencing January 28, 1903, at which evidence of numerous witnesses was heard. On March 13, 1903, under instructions from J. W. Zevely, Indian Inspector, the Creek Town-Site Commission made a new award and schedule of block 209 in the town site of Muskogee, which is as follows:

Department of the Interior, Town-Site Commission's Schedule of Appraisement.

Town of Muskogee, in Creek Nation, Indian Territory.

Supplemental.

| Lot No | Block No. | Improvements | | Appraised Value of Improvements. | Appraised Value of Lots. | Rate per ct. or Sec. |
|---|---|---|---|---|---|---|
| | | Owner | Character and Remarks | | | |
| | 209 | | School District of Muskogee | | 49.20 | 20 |

The above school property is re-scheduled so that the title thereto will pass to the school district instead of the incorporated town; this, in our judgment, after careful consideration, being right and proper, and is as provided by Mansfield's Digest of the Statutes of Arkansas.

I hereby certify that the foregoing supplemental schedule of the town of Muskogee, Creek Nation, Indian Territory, is true and correct, and is made for the purpose of changing the name of the owner of the property mentioned, and it does not change the appraisement in any way. Dwight W. Tuttle.

Chairman Town-Site Commission for Creek Nation.

March 13, 1903.

That this schedule was forwarded to the Secretary of the Interior with the recommendation that the schedule be approved, and on April 16, 1903, said schedule was approved by the Secretary of the Interior.

It is alleged: That the action of J. W. Zevely in instructing the Creek Town-Site Commission to prepare a new schedule awarding and scheduling said block 209 to the school district of Muskogee, the action of said commission in making said schedule, and the action of the Secretary of the Interior in approving the same were each and all wholly unwarranted in law, null and void, and were based upon a gross mistake and misapprehension of the law. That said award and schedule of said block to said school district of Muskogee shows to have been made under the terms of section 20 of the Creek Allotment Agreement, but there was no pretense made by said school district. by said J. W. Zevely, by said Creek Town-Site Commission, or by said Secretary of

the Interior that said block 209 was occupied by said school district of Muskogee, either at the time said Creek agreement was signed or when said agreement was ratified by the Congress, or when it was ratified by the Creek Nation, or when it was proclaimed by the President of the United States, or on April 16, 1903, when said schedule was approved, or at any other time prior to any of said dates, but that, on the other hand, it was conclusively shown by the evidence adduced before said Creek Town-Site Commission on January 28, 1903, that said block 209 had never been occupied by said school district of Muskogee or by any school or institution of learning prior to January 28, 1903, and the members of said commission so found in the opinions rendered by them on March 13, 1903. That the school district of Muskogee did not come within the classes mentioned as "all other schools and institutions of learning" specified in section 20 of the Creek Allotment Agreement, and in awarding and scheduling said block to said school district under said section, the officers so acting did so under and by reason of a mistake of law in interpreting said section.

The petition alleges further: That two reports were filed by the Creek Town-Site Commission after hearing the evidence, both recommending that the land in question be awarded to the city of Muskogee for school purposes, but each conflicting on material issues necessary to be found. That the reports were forwarded to the Secretary of the Interior, who on May 8, 1903, denied the petition of Padgett. That plaintiff had no knowledge of the opinions and decisions of the Creek Town-Site Commission, of J. W. Zevely as acting Indian inspector, of the Commissioner of Indian Affairs, of the Secretary of the Interior, or of the making and approval of said schedule approved April 16, 1903, until after the execution of the patent for said block. That on June 3, 1903, the school district of Muskogee paid to the Indian agent of the Union Agency at Muskogee the sum of $24.60, being one-half of the appraised value of block 209, and on July 29, 1903 the Principal Chief of the Creek Nation signed and executed a tribal deed or patent for said block, pretending to convey the same to the "trustees of the school district of Muskogee, Ind. T.," which was approved by the Secretary of the Interior November 25, 1903, and recorded on the records of the Commission to the Five Civilized Tribes in Volume E of Deed Records, Town Lots, page 414. That thereafter said patent or deed was delivered to the defendants herein, who still have possession thereof, and that after the delivery of said patent the defendants took possession

of said block for the first time. The patent contains the following recitals, among others:

"Whereas, a town-site commission, heretofore appointed and acting under authority of the act of Congress approved March 1, 1901 (31 Stat. 861), agreement ratified by the Creek Nation May 25, 1901, has appraised the lots in the town of Muskogee, Muskogee (Creek Nation, Indian Territory) ; and

"Whereas, the plat of said town was approved by the Secretary of the Interior on the 4th day of June, 1900, and was duly placed on file; and

"Whereas, said commission has awarded the real estate described hereinbelow to trustees of the school district of Muskogee, Indian Territory, who has paid twenty-four and 60-100 (24.60) dollars, the full amount of the purchase price. * * *"

It is then alleged: That there was on said June 3, 1903, no law authorizing said school district of Muskogee to purchase said block 209 for one-half of its appraised value, or for any other fixed sum, and on said day there was no law authorizing said Indian agent or any other officer or person to accept such payment from said school district. That on July 23, 1903, there was no law authorizing and empowering the Principal Chief of the Creek Nation to sign or execute the deed or patent aforesaid to said "trustees of the school district of Muskogee." That on November 25, 1903, there was no law authorizing the Secretary of the Interior to approve said deed or patent, and on December 7, 1903, there was no law authorizing the recording of said deed as aforesaid, but all of said actions were taken by the respective officers herein mentioned because said officers and each of them was grossly mistaken in the law governing their actions in the premises and misinterpreting said law. That at all said times this plaintiff was entitled to purchase said block 209 at one-half its appraised value, and to receive a patent therefor, and that the patent or deed to said block 209 was issued and delivered to said school district instead of to this plaintiff, in fraud of the rights of this plaintiff. That the board of directors of the school district of Muskogee, the first Muskogee Town-Site Commission, and the several members thereof, the Secretary of the Interior, the second Muskogee Town-Site Commission, and the several members thereof, the Creek Town-Site Commission, and the several members thereof, Dwight W. Tuttle, Geo. A. Alexander, and H. C. Linn, each fell into error in the construction of the laws governing their respective powers and duties in the premises and regulating and controlling their respective authority, and their following respective actions were wholly unwarranted in law, utter-

ly null and void, and in fraud of plaintiff's rights, to wit.

The action of the board of directors of the school district of Muskogee, or a committee of said board, in selecting, some time during the year 1899, said block 209 as and for a school site, which was taken by said school board and permitted by the first Muskogee Town-Site Commission.

The actions of the said first Muskogee Town-Site Commission, in so far as it reserved, or attempted to reserve said block 209 for school purposes, either to the incorporated town of Muskogee, to the school district of Muskogee, or to the public, either by the making of plats of said town site and marking said block "School" thereon, or by certifying to said plats so made and marked as correct, or by making and certifying to the schedule of improvements upon lots in the town site of Muskogee, which was approved July 7, 1900, or by the making of the schedule of appraisement of lots irrespective of improvements, which schedule was approved June 28, 1900, and certifying to the same as correct.

The actions of the Secretary of the Interior in approving on June 4, 1900, the survey and plats of the town site of Muskogee, in approving on June 28, 1900, the schedule of the appraisement of lots exclusive of improvements in the town site of Muskogee, and in approving on July 7, 1900, the schedule of the appraisments of improvements upon lots in said town sites, in so far as he may have reserved, or attempted to reserve, said block 209 for school purposes, either to the incorporated town of Muskogee, to the school district of Muskogee, or to the public.

The actions of the second Muskogee Town-Site Commission some time in July, 1901, in so far as it refused to award and schedule said block 209 to this plaintiff, and holding that said block had been reserved for public purposes, in so far as it attempted to set forth said block 209 in the schedule approved August 10, 1901, as for "School Public use," to appraise said block as a part of the area, in parks, etc., at $20 per acre, and to certify to said schedule as correct, in fraud of plaintiff's rights, and in so far as it failed and refused to appraise said block 209 as a separate block at its actual appraisable value as other lots and blocks were appraised.

The actions of the Secretary of the Interior in approving said schedule of August 10, 1901, so far as said approval related to said block 209, and so far as said action constituted, or was intended to constitute, an awarding and scheduling, or a reservation of said block 209 for school purposes, either to the incorporated town of Muskogee, to the school district of Muskogee, or to the public, and for the further reason that the said Muskogee Town-Site Commission and the Indian Inspector for the Indian Territory fraudulently concealed from said Secretary of the Interior the fact that said block had never theretofore been, and was not then, occupied by any school or institution of learning.

The actions of the Creek Town-Site Commission hereinbefore recited in declining and refusing to entertain, hear, or determine the application filed with it by plaintiff to award and schedule said block 209 to him, and to permit plaintiff to institute a contest for said block, and in holding and deciding that said commission had no jurisdiction to entertain, hear, or determine said application or to permit such contest, but that plaintiff must have recourse to the Muskogee Town-Site Commission, which had gone out of existence, and in making the schedule which was approved by the Secretary of the Interior on November 1, 1902, and in making the certificate and statement thereto attached, so far as said schedule, certificate, and statement refer to said block 209.

The action of the Secretary of the Interior in approving said schedule on November 1, 1902, so far as said action related to said block 209, and for the further reason that the Indian Inspector for the Indian Territory and said Creek Town-Site Commission fraudulently concealed from said Secretary the fact that said block had never been, and was not then, occupied by any school or institution of learning.

The action of said Creek Town-Site Commission in notifying the mayor or other constituted authorities of the incorporated city of Muskogee on November 11, 1902, that said city had the right to purchase said block 209 under the Creek Allotment Agreement.

The decision rendered on March 13, 1903, by Dwight W. Tuttle and Geo. A. Alexander, two members of the Creek Town-Site Commission, in which they held "That the town of Muskogee has acquired a vested right in the property in question which cannot be controverted," and decided that "the former action of the Muskogee and Creek Commissions and the approval thereof by the honorable Secretary of the Interior be not disturbed," and that the property remain scheduled to the "Town of Muskogee for school purposes," and the separate decision rendered on said day by H. C. Linn, the third member of the Creek Town-Site Commission, in which he held "that, the said land having been scheduled to the town of Muskogee, under the law in existence at the time, as a park, while Sharum made no claim to the land, and as the action of the board in giving the land to

the city was approved by the honorable Secretary of the Interior, I must hold that the action was final, and that the treaty could not come in afterwards and abrogate that which was done under the law in existence at the time," and recommended: "That the land in question be awarded to the city of Muskogee for school purposes, as was done by the Muskogee Town-Site Commission." That each of said findings and each of said decisions were so made and rendered by said members of said commission fraudulently, for the purpose of depriving plaintiff of his rights in and to said block 209, and for the purpose of illegally and fraudulently upholding, sustaining, and giving effect to said former void, illegal, and erroneous actions of the Secretary of the Interior, of said Creek Town-Site Commission, of the first Muskogee Town-Site Commission, and of the second Muskogee Town-Site Commission, in attempting to reserve and award said block 209 for school purposes in violation of law; that in pursuance of, and in order to carry out, said purposes and intentions to illegally and fraudulently deprive plaintiff of said block 209, and to illegally and fraudulently uphold, sustain, and give effect to the former illegal and void actions of the Secretary of the Interior and of the three town-site commissions last above mentioned, in attempting to set aside and reserve said block 209 for school purposes, the schedule was prepared on said March 13, 1903, the same day upon which the several holdings and decisions were made and rendered, by which schedule it was attempted to award and reschedule said block 209, in direct conflict with each of said decisions, not to the town of Muskogee, but to the school district of Muskogee, an entirely different body corporate, representing a distinct and different area and population from that included within the town or city of Muskogee. That the evidence taken before the Creek Town-Site Commission clearly establishes that Jane Dolman was a duly enrolled citizen of the Creek Nation. That when the Curtis Act was approved June 28, 1898, and for many years prior thereto, she had been in the actual and undisputed possession of the field of which said block constituted a part. That she had inclosed said field with a fence, and cultivated, improved, and tilled said field. That the same was so inclosed, improved, and in the possession of Jane Dolman on June 28, 1898, and until she sold the same block to Sharum. That the finding of the Creek Town-Site Commission that, when the Curtis Bill (Act June 28, 1898) was passed, said block was wholly unimproved, and not in the actual possession of any person, and that the contestant had failed to establish that said field was ever inclosed or improved by any Creek citizen.

was made, either by a gross mistake in said findings of fact, or said findings of fact were fraudulently made in direct and known conflict with the testimony and facts, and with the fraudulent intent to sustain and uphold the former unauthorized and illegal acts in attempting to reserve, award, and set aside said block to the city of Muskogee for school purposes, in violation of law and in fraud of plaintiff's rights in and to said block. That said report and findings were never treated, considered, regarded, or acted upon by the Secretary of the Interior as an adjudication of any rights of the plaintiff, but were "submitted for the information of the department," as shown by the letter of the Indian inspector dated April 11, 1903. That the decision of the Secretary of the Interior was a denial of the application based upon the recommendation of the Indian inspector of April 11, 1903, wherein it was recommended that:

"It is my opinion that this block was segregated for public purposes by the approval of the plat of Muskogee and, the block having been appraised to the town for school purposes, the department should decline to make any change or disturb the schedule as it at present stands.

"I therefore submit the papers for the consideration of the department, with the recommendation that the petition be denied."

That said opinion was so expressed, and such recommendation based thereon was so made, by said acting Indian inspector for the Indian Territory, because he fell into error in the construction of the law applicable to the premises, and the Secretary of the Interior likewise accepted said recommendation, and denied the said petition of this plaintiff because he fell into error in the construction of the law applicable to the case, which caused him to deny plaintiff's said petition instead of awarding to plaintiff said block 209, which said Secretary of the Interior would have done had it not been for such misconstruction of the law on his part.

Plaintiff prays that it may be adjudged and decreed that he is the legal and equitable owner of said block, and that the defendants are holding the legal title thereof in trust for him. The testimony taken before the Creek Town-Site Commission is attached to and made a part of plaintiff's petition. A demurrer was sustained to the petition. Motion for new trial was filed on the grounds:

"That the judgment of the court herein is contrary to law.

"Errors of law occurring at the trial and excepted to by this plaintiff, in that said court erred in sustaining the demurrer of the defendants herein and in dismissing plaintiff's action."

The same was overruled, and the cause was brought here for review.

When the Town-Site Commissioners and officers of the Interior Department decide controverted questions of fact, in the absence of fraud, imposition, or mistake, their decisions on such questions are final. This was held in the case of Ross v. Stewart, 227 U. S. 530, 33 Sup. Ct. 345, 57 L. Ed. 627. But, if it clearly appears that the Town-Site Commission committed some material error of law, that misrepresentations and fraud were practiced upon them, or that they themselves were chargeable with fraudulent practices, and that as a result the patent was issued to the wrong party, then equity will decree that the title is held in trust for the party legally entitled to the same.

It was said in Leak et al v. Joslin, 20 Okla. 200, 94 Pac. 518:

"When town-site commissioners, by virtue of an act of Congress otherwise known as the 'Supplemental Creek Agreement' (March 1, 1901, c. 676, 31 Stat. 861), where there is no conflict as to the facts, but by a misconstruction of the law as applied to the facts, schedule a lot to a party who is not entitled to same under the law, after title has passed to a private party, courts of equity will inquire as to whether or not such title shall be held as trustee for the party really entitled to same."

This subject has been thoroughly discussed in Mitchell v. Bell, 31 Okla. 117, 120 Pac. 560; Fast v. Walcott et al., 38 Okla. 715, 134 Pac. 848; Ross v. Stewart, 25 Okla. 611, 106 Pac. 870; Citizens' Trading Co. v. Bass, 30 Okla. 747, 120 Pac. 1095; James et al. v. Germania Ins. Co., 107 Fed. 597, 46 C. C. A. 476; Bowen v. Carter et al., 42 Okla. 565, 144 Pac. 170.

It must be borne in mind that the demurrer admitted every material allegation of the petition; and if the allegations of a material error of law, misrepresentation, and fraud in the issuance and procurance of the patent are well pleaded, then the trial court erred in sustaining the demurrer. The demurrer admitted: That, when the first Muskogee Town-Site Commission was appointed, the incorporated town of Muskogee and the school district of Muskogee were separate bodies corporate, representing different areas and populations. That after August 25, 1901, no steps were ever taken to acquire title to said block under the schedules of March 24, 1900, and May, 1900. That the land now constituting block 209 was not actually occupied or used for school purposes, and had never been so used but was then, in the undisputed possession of plaintiff, and was then inclosed by and within the fence surrounding the Jane Dolman field. That the failure of the second

Town-Site Commission to hear the plaintiff or to award said block to him, was based upon a gross mistake in the interpretation of the law. That the only provision empowering the Town-Site Commission to award and schedule any portion of the said townsite of Muskogee to the public, to the city of Muskogee, or to the school district, for school purposes was section 20 of the Creek Allotment Agreement supra. That said block was occupied by no school or institution of learning on March 8, 1900, when said Creek Allotment Agreement was signed, nor on March 1, 1900, when said agreement was ratified by Congress, nor on May 25, 1901, when said agreement was ratified by the Creek Nation, nor at the time said award and schedule was made by said commission, nor at the time said schedule was approved by the Secretary of the Interior, and had never been, at any such times or prior thereto, occupied by any school or institution of learning, by the city of Muskogee, or the school district of Muskogee; all of which facts, both as to the law and the occupancy of said block, were well known to said Muskogee Town-Site Commission at the time said award and schedule were made, and were also well known to the Secretary of the Interior at the time he approved said schedule, but said block 209 was so awarded and scheduled by said Muskogee Town-Site Commission with the full knowledge that their action in so doing was in violation and contravention of law, and with the express purpose and fraudulent intent on the part of said commission and the members thereof of securing the reservation of said block for school purposes and of permitting and enabling the city of Muskogee, in violation of law, to secure said block for school purposes for much less than its fair appraisable value. That said block 209 was not separately appraised by said second Muskogee Town-Site Commission, but at the end of said schedule approved August 10, 1901, the following appeared:

Area in acres, parks, etc., 56 acres
  at $20 _____$1,120.00
Area in acres, cemeteries, 81 acres
  at $20 _____ 1,620.00

That before this plaintiff had learned that said schedule, which was approved August 10, 1901, had been made or approved, the second Muskogee Town-Site Commission had been abolished by the Secretary of the Interior, and the Creek Town-Site Commission had been appointed and had been invested by law and the instructions of the Secretary of the Interior with authority to do and perform all acts necessary and proper under the law relative to the town site of Muskogee, and that the acts of J. W. Zevely, the Creek Town-Site Commission, and the Secretary of

the Interior, in relation to the schedule approved April 16, 1903, were each and all wholly unwarranted in law, null, and void, and were based upon a gross mistake and misapprehension of the law, the facts showing the same to be null and void being fully set forth in the petition.

The patent shows on its face to have been issued to the trustees of the school district of Muskogee, Ind. T., reciting that the appraisement was made by the Town-Site Commission appointed under the Creek Agreement, and that such commission awarded the same to said trustees. The defendants' claim of title comes under section 20 of the Creek Allotment Agreement, which provides that all schools and institutions of learning located in incorporated towns in the Creek Nation may purchase lots or parcels of land occupied by them, in the same manner and upon the same conditions as Henry Kendall College, Nazareth Institute, and Spaulding Institute. Under this section the schools and institutions of learning located in the school district of Muskogee could purchase lots or parcels of land occupied by them.

It is alleged that block 209 was not occupied by any school or institution of learning during any of the times mentioned in the petition, and the Creek Town-Site Commission so found which fact was well known to the commission at the time of the award and schedule, and was also known to the Secretary of the Interior at the time of approval, and that such block was so awarded and scheduled by said commission with the full knowledge that their action in so doing was in violation and contravention of law, and with the express purpose and fraudulent intent on the part of said commission and the members thereof of securing the reservation of said block for school purposes, and of permitting and enabling the city of Muskogee, in violation of law, to secure said block for school purposes for much less than its fair appraisable value.

The evidence before the commission on the question of the occupancy of said block by any school or institution of learning at or prior to the award and schedule is silent. The Creek Town-Site Commission found that it did not occupy the same. If it did not occupy said block, then under section 20, supra, it did not have a preference right to the same. While all reasonable presumptions, must be indulged in to support the decisions of the Interior Department and the Town-Site Commission in deciding the controversy and issuing the patent, yet an examination of the evidence, which has been attached to and made a part of the petition, leaves it very doubtful whether there was

any evidence to establish the material point here involved; but the petition alleges, and the finding of the Creek Town-Site Commission shows, a want of occupancy, and, for the purpose of testing the sufficiency of the petition by demurrer, such facts are admitted; and if block 209 was not occupied by any school or institution of learning, then the same could not have been scheduled to such school district, but, under the allegations of the petition, should have been awarded to Padgett. The case at bar clearly comes within Mitchell v. Bell, supra. This petition shows that the plaintiff has availed himself of all the rights he had before the officers of the Department of the Interior and the Town-Site Commissions, and that he has performed every requirement of law and the rules regulating the acquirement of title applicable to lots within the city of Muskogee.

We therefore conclude that the petition states a cause of action, and the court erred in sustaining the demurrer to the same. There are numerous questions raised by the brief, but, in the view we take of this case, it is only necessary for us to pass upon this one phase of the petition.

The judgment should therefore be reversed, and the cause remanded.

By the Court. It is so ordered.